The **UNITED STATES** of America for the Use and Benefit of Mason **PEEVY**, d/b/a Peevy's **D-X** Service Station, Plaintiff,

v.

**PENSACOLA CONSTRUCTION COMPANY**, a Corporation, Missouri Valley Dredging Co., a Corporation, and Commercial Union Insurance Company, a Corporation, Defendants.

No. 1985.

United States District Court
W. D. Arkansas,
Fort Smith Division.
Aug. 26, 1966.

Bethell & Pearce, Ft. Smith, Ark., for plaintiff.

Shaw & Kimbrough, Ft. Smith, Ark., for defendants.

## OPINION

JOHN E. MILLER, Chief Judge.

The motion of plaintiff filed herein August 11, 1966, for summary judgment and the response filed August 17, 1966, of defendants are before the court.

This suit was instituted under the Miller Act, and jurisdiction is granted by Sec. 270b of the Act, 40 U.S.C. 270b, (1965 Supp.). The pleadings, exhibits thereto, interrogatories and answers thereto, the affidavit and exhibits in support of the motion for summary judgment, and the affidavits in support of the response to the motion show that there is no genuine issue as to any material fact. Rule 56(c), Fed.R.Civ.P., provides:

> "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Because of the many delays in the formation of the issues now before the court, it seems necessary to refer rather fully to the pleadings. The complaint was filed April 11, 1966. In paragraphs VI, VII and VIII, it is alleged that the defendant Pensacola Construction Company (hereinafter referred to as Pensacola) was awarded a contract by the United States Government in the sum of $884,-080.00 for bank stabilization revetments and dikes in Flat Rock Bend Pilot Channel Area of the Arkansas River in the Western District of Arkansas. The defendant Missouri Valley Dredging Company (hereinafter referred to as Missouri Valley) was awarded a portion of the work by the prime contractor, Pensacola.

A payment bond was executed by Pensacola and the defendant Commercial Union Insurance Company (hereinafter referred to as Insurance Company) as required by the Miller Act, 40 U.S.C. § 270a et seq., in the penal amount of the contract, which bond was conditioned for the payment of all claims for material or labor furnished or performed in connection with said contract. In the performance of the contract, Missouri Valley, for itself and Pensacola, purchased from the use plaintiff, Peevy's D-X Service Station (Peevy's) gasoline, oil, parts, materials and supplies in the principal amount of $1,174.49 between September 1, 1965, and December 27, 1965.

In paragraph IX of the complaint the use plaintiff alleged that it is entitled to recover jointly from the defendants the said sum of $1,174.49, "together with interest thereon at a lawful rate from the due date thereof, and a reasonable attorney's fee for the plaintiff's attorney herein, any penalties allowed by law, and the plaintiff's costs herein expended."

The three defendants were and are represented by the same firm of attorneys. The complaint was filed April 11, 1966. On May 2 Missouri Valley filed its motion for an extension of time in which to plead, and on May 3 Pensacola and the Insurance Company filed a motion for extension of time to answer. On May 3 an order was entered allowing defendants 20 days from the date of the order in which to answer or otherwise plead. On May 23 Missouri Valley was given 10 days additional time.

On May 23 Pensacola and the Insurance Company filed their answer, in which they prayed that the complaint of plaintiff be dismissed, or in the alternative that they be given judgment against Missouri Valley for such amounts as defendants may be held liable to plaintiff.

On June 2 Missouri Valley was granted a third extension until June 10 in which to answer or otherwise plead. On the same day Pensacola and the Insurance Company filed a cross claim against Missouri Valley. On June 10 Missouri Valley filed its answer, in which it admitted it owed the claim of plaintiff in the principal sum of $1,174.49. It further pleaded that it had tendered the said sum to the plaintiff and had offered to pay the costs of the action, which tender was declined by plaintiff. It paid into the registry of the court the said sum of $1,174.49, the principal sum, but made no offer or tender of interest on said sum. It also tendered to the Clerk a check in the amount of $15.00 for costs, and further offered to pay the charges of the United States Marshal for service of process when apprised of the amount of such charges. It was further alleged: "This defendant specifically denies that in law or fact plaintiff is entitled to penalty or attorney's fees."

On July 7 Missouri Valley served five interrogatories upon the use plaintiff. At that time the attorney for the plaintiff was engaged in a political campaign, and the court, upon the request of the attorney, granted the use plaintiff until August 15 to submit answers to the interrogatories. The interrogatories were fully answered on August 11, and on the same date the motion for summary judgment was filed by the use plaintiff. On August 17 the defendants filed their response to the plaintiff's motion for summary judgment, and on August 22 filed affidavits in support of the response.

In the response the defendants stated:

"1. Plaintiff is not entitled to judgment against defendant Commercial Union Insurance Company for penalty or attorney's fees for the reason that plaintiff has never made a demand for payment prior to filing suit as required by Ark.Stat.Ann. Sec. 66–3238.

"2. Plaintiff is not entitled to judgment against defendants Pensacola Construction Company and Missouri Valley Dredging Company for penalty and attorney's fees for the reason that there is no federal or state legal authority for such award.

"3. This court has lost jurisdiction by reason of payment by Missouri Valley Dredging Company of the claim which is the subject of federal jurisdiction, and other questions have become moot." [1]

In paragraph 4 of the response Missouri Valley alleged that the plaintiff had not stated in dollars and cents the amount of interest demanded and it is impossible for defendants, on the basis of available information, to determine the amount of such interest. It proceeded then to figure interest in the sum of $25.45, representing the interest on the principal account from February 1, 1966, through June 10, 1966. The date of June 10, 1966, was selected because that was the date that the principal sum was deposited in the registry of the court.

Prior to plaintiff's filing motion for summary judgment and answering defendants' interrogatories on August 11, 1966, none of the defendants offered to pay the interest on the principal amount nor offered any legal excuse for not confessing judgment for the interest as well as the principal. The statute herein involved is Ark.Stat.Ann., Sec. 66–3238,[2] (1966 Repl.), and provides:

"In all cases where loss occurs and the * * * company liable therefor shall fail to pay the same within the time specified in the policy, after demand made therefor, such person, firm, corporation, and/or association shall be liable to pay the holder of such policy or his assigns, in addition to the amount of such loss twelve percent (12%) damages upon the amount of such loss, together with all reasonable attorneys' fees for the prosecution and collection of said loss * * *."

---

1. This paragraph is completely devoid of merit and will not be discussed.

2. Formerly Section 66–514.

To entitle a creditor or plaintiff to recover the statutory penalty and attorneys' fee, he must recover the amount demanded of the defendants and their surety. The Supreme Court of Arkansas has many times held that the statute has no application where an excessive demand is made and that there can be no recovery for damages and attorneys' fees where the judgment is for less than the demand. National Fire Insurance Co. v. Kight, (1932) 185 Ark. 386, 47 S.W.2d 576, and cases therein cited. On the other hand, the Supreme Court of Arkansas has in many cases held that if the surety desires to avoid the penalty and attorneys' fees provided for in the statute, it should have offered to confess judgment for the amount sued for, and thus have ended the lawsuit. If it does not do so but elects to proceed and contest the claim of the creditor on any other ground, the surety thereby becomes liable for the penalty and attorneys' fees provided for in the statute when the plaintiff recovers the amount sued for. Queen of Arkansas Insurance Co. v. Milham, (1912) 102 Ark. 675, 145 S.W. 540.

In Broadaway v. Home Insurance Co., (1941) 203 Ark. 126, at page 129, 155 S.W.2d 889, at page 891, the court said:

"It is our opinion that before the provisions of this statute with reference to attorney's fees and penalty are available to an insured, he must file suit for and recover at least as much as the minimum demand which he has theretofore made upon the insurance company."

The Broadaway case further held that if the surety company offers to confess judgment or tenders to the court "the amount sued for, plus interest and costs to the date of tender," that the statutory penalty and attorneys' fees are not allowable.

In Armco Steel Corp. v. Ford Construction Co., (1963) 237 Ark. 272, 372 S.W.2d 630, the court reviewed several decisions in which the application of the statute was considered and quoted at page 275 of 237 Ark., at page 632 of 372 S.W.2d with approval a statement from Great Southern Fire Insurance Co. v. Burns & Billington, (1915) 118 Ark. 22, 31, 175 S.W. 1161, L.R.A.1916B, 1252, as follows:

"'If the insurance company had desired to avoid the penalty and attorneys' fee provided for by the statute, it should have offered to confess judgment for the amount sued for in the amended complaint.'"

Following the above quotation, the court said:

"Although the above quote may be classified as dictum, yet it is a clear statement of the rule consistently followed by the court. See: National Fire Insurance Company v. Kight, 185 Ark. 386, 47 S.W.2d 576; Broadaway v. The Home Insurance Co., 203 Ark. 126, 155 S.W.2d 889. The first case construed C. & M. Digest § 6155 and the latter case construed Pope's Digest § 7670, both sections being the same as Ark.Stat.Ann. § 66–3238 (Supp.1961)—the section relied on here by appellant."

In the instant case the defendants refused to pay or confess judgment for any portion of the interest until after the use plaintiff filed the motion for summary judgment. In its response to the motion for summary judgment Missouri Valley offered to pay interest on the principal sum from the date of February 1, 1966, to June 10, 1966, the date that it, by answer, tendered into the registry of the court the principal amount of $1,174.49, together with ordinary court costs. However, after making the tender, it proceeded to serve on July 7, 1966, upon plaintiff interrogatories, which the use plaintiff was required to answer, and which he did answer on August 11, the date he filed the motion for summary judgment. In answer to Interrogatory No. 5, the plaintiff stated that he demanded the lawful rate of interest allowed in Arkansas on each item of account filed in the cause as of the date the same was due and owing. Even after ascertaining the amount of interest claimed, Missouri Valley filed its response to the

motion for summary judgment and proceeded to submit brief in support of its contention that it is not liable for the statutory penalty and attorneys' fee.

In the case of Equitable Life Assurance Society of United States v. Gordy, (1958) 228 Ark. 643, 309 S.W.2d 330, the plaintiff, Gordy, sued to recover disability benefits as provided in two policies issued by the defendant, Equitable Life. It was recognized by the policyholder's attorney that a portion of the benefits provided by the terms of the policy could be barred by a plea on the part of the insurance company of the five-year statute of limitations. There was never any doubt about that plea being available to the insurance company if it desired to assert it. In the negotiations for settlement before the suit was ever filed, the policyholder's attorney offered to accept the benefits accruing under the provisions of the policy during the five-year period immediately preceding the time suit would be filed. The insurance company refused to accept the offer to settle for the five-year period, and therefore the policyholder was compelled to file suit. In the suit the insured asked for the full amount provided in the policy. When the insurance company filed its answer it pleaded the statute of limitations to that portion accruing more than five years before suit was filed, and the insured promptly amended his complaint to ask for the benefits accruing only within the five-year period. Even then, the insurance company did not offer to confess judgment, but a pretrial was held and the trial was set for a later date. Before the trial date arrived the insurance company did confess judgment for the sum sued for in the amended complaint. In granting the plaintiff the statutory penalty and attorneys' fee, the court, beginning at page 646 of 228 Ark., at page 332 of 309 S.W.2d said:

" * * * The insurance company was in no way prejudiced by the amount sued for in the original complaint. In the negotiations for a settlement the insured had offered to take less—he had offered to take only the amount accruing during the five year period not barred by the statute —but the claim was not paid. If he had asked for the same relief in his original complaint as he did in the amended complaint, the insurance company would have had to pay the attorney's fee and penalty.

"Ark.Stat. § 66–514 [now Sec. 66–3238] provides:

" 'In all cases where loss occurs (on) and the * * * company * * * liable therefor shall fail to pay the same within the time specified in the policy, after demand made therefor, such person, firm, corporation and/or association shall be liable to pay the holder of such policy, in addition to the amount of such loss, twelve (12) per cent damages upon the amount of such loss, together with all reasonable attorneys' fees for the prosecution and collection of said loss; * * *'

"And we have held that the attorney's fee and penalty attaches if the insured is required to file suit, even though judgment is confessed before trial. Globe & Rutgers Fire Ins. Co. v. Batton, 178 Ark. 378, 10 S.W.2d 859; Commercial Union Assurance Co. v. Leftwich, 191 Ark. 656, 87 S.W.2d 55. A good faith denial of liability is no defense to the claim for attorney's fee and penalty. Life & Casualty Ins. Co. of Tenn. v. Wiggins, 224 Ark. 377, 273 S.W.2d 405."

Defendants have contended on their brief in opposition to the motion for summary judgment and now contend that the Miller Act does not authorize assessment of any penalties or attorneys' fees.

This court in United States for Use and Benefit of Magnolia Petroleum Co. v. H. R. Henderson & Co., (W.D.Ark. 1955) 126 F.Supp. 626, beginning on page 637 considered the question of whether an insurance company, in a proper Miller Act suit, is liable to plaintiff for an attorneys' fee and the statutory penalty of 12 percent. The court concluded that the contractor and the in-

surance company were liable under the Arkansas statute for penalty and attorneys' fee.

In United States for Use and Benefit of Caldwell Foundry and Mach. Co. v. Texas Construction Co., (5 Cir. 1955) 237 F.2d 705, the court considered the same question and reached the same conclusion. Before entering into a discussion of the question, the court, beginning at the bottom of page 706, said:

"Appellees do not raise the question, as well they might, of whether the Miller Act, 40 U.S.C.A. §§ 270a–270d, permits the imposition of attorney's fees upon the sureties in payment bonds. Having ourselves raised up that straw man, we knock it down with the observation that, in suits under the Miller Act, the recovery of interest, costs, and attorney's fees is governed by the state law. See Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 381, 37 S.Ct. 614, 61 L.Ed. 1206. The allowance of attorney's fees under such a bond was fully considered and discussed in United States for Use and Benefit of Brady's Floor Covering v. Breeden, D.C.Alaska, 110 F. Supp. 713, 715, and United States for Use and Benefit of Magnolia Petroleum Co. v. H. R. Henderson & Co., D.C.W.D.Ark., 126 F.Supp. 626, 637; see also, authorities collected in last cited case. Clearly, the judgment should include interest at the rate fixed by Texas law, accruing after notice to the surety of default of the principal. See United States v. United States Fidelity & Guaranty Co., 236 U.S. 512, 35 S.Ct. 298, 59 L.Ed. 696; Illinois Surety Co. v. John Davis Co., supra; R. P. Farnsworth [&] Co. v. Electrical Supply Co., 5 Cir., 112 F.2d 150, 130 A.L.R. 192, rehearing denied 5 Cir., 113 F.2d 111, 130 A.L.R. 197. We think that it should include also a reasonable amount as attorney's fees."

In Lewis v. Goldsborough (E.D.Ark. 1962), 234 F.Supp. 524, Judge Young at page 530 approved the conclusion that this court had reached in United States for Use and Benefit of Magnolia Petroleum Co. v. H. R. Henderson, supra.

Defendants contend further that they are not liable for the reason that plaintiff has never made a demand for payment prior to filing suit as required by Ark.Stat.Ann., Sec. 66–3238. The record indisputably discloses that the use plaintiff did make demand upon all of the defendants for the payment of the account and accrued interest prior to the filing of the suit, and various excuses were made by defendants Missouri Valley and Pensacola for the nonpayment of the amount. This question was thoroughly considered in the case of Trinity Universal Ins. Co. v. Smithwick, (8 Cir. 1955) 222 F.2d 16. The late Judge Collet, writing for the court, beginning at page 23 stated:

"Trinity contends there was no demand such as the statute required and for that reason the allowance was improper. There is some variety of opinion on the question of whether the filing of a suit without prior formal demand will satisfy a statutory requirement for a demand. Trinity cites several cases in which the filing of a suit without prior demand was held to be insufficient. Noteworthy of those is the Texas case of Metropolitan Life Ins. Co. v. Wann, 130 Tex. 400, 109 S.W.2d 470, 115 A.L.R. 1301. In Texas under a somewhat similar statute, that appears to be the rule. See Metropolitan Life Ins. Co. v. Wann, 130 Tex. 400, 109 S.W.2d 470. It appears that the Texas statute requires that the 'demand' must be made thirty days before the filing of the suit. V.A.T.S. Insurance Code, art. 3.62. Metropolitan Life Ins. Co. v. Wann, supra, 109 S.W. loc. cit. 472.

"The Arkansas Statute provides that:

" 'This liability attaches when liability is denied by the insurer and suit is filed.'

"The underlying purpose for requiring a formal demand as a prerequisite to liability for such a penalty

is that the insurer have an opportunity to investigate the claim and pay the amount of the demand without incurring the penalty. The thirty day provision in the Texas Statute answers that purpose. It appears that the Arkansas Supreme Court has construed the Arkansas Statute as not requiring a demand other than the filing of a suit and has accomplished the above stated underlying purpose by allowing the insurer to tender into court and confess judgment for the amount sued for and be relieved of the penalty and attorney fees. Broadaway v. Home Ins. Co., 203 Ark. 126, 155 S.W.2d 889; National Fire Ins. Co. v. Kight, 185 Ark. 386, 47 S.W.2d 576. It is true that in those cases there had been a previous demand before suit for a larger amount than claimed in the suit. But that does not alter the principle upon which the cases were determined. The original demands were not the same as those contained in the suit. Hence the institution of the suit contained the first demand for the amount then claimed under the Arkansas decisions.

"A new and lesser demand may be made by amendment after the suit is filed in which event if the insurer offers to pay the reduced amount, or asks for time in which to pay, there can be no recovery of the penalty. Life & Casualty Co. v. Sanders, 173 Ark. 362, 292 S.W. 657. But when the insurer elects 'to go on and contest the claim on other grounds,' and there is a recovery for the amount sued for it becomes liable under the Arkansas Statute for the penalty and attorney fee. Queen of Arkansas Ins. Co. v. Milham, 102 Ark. 675, 145 S.W. 540; National Fire Ins. Co. v. Kight, supra. That is the situation in this case."

The use plaintiff sold and delivered to Missouri Valley during the month of September 1965 gasoline, oil, etc., in the sum of $267.07, which became due and payable on October 1, 1965. During October the amount of gasoline, etc., sold to Missouri Valley was $184.55, which became due and payable on November 1. During November the plaintiff sold and delivered to Missouri Valley $368.40 worth of oil, gasoline, etc., which became due on December 1, and during December the use plaintiff sold and delivered gasoline, etc., in the sum of $354.47, which became due on January 1, 1966. No note or other security was taken for the payment of the amount, and the suit is upon the open account.

In Frazer v. Pettit-Galloway Co., (1926) 172 Ark. 209, at page 211, 287 S.W. 1010, at page 1011, the court said:

"Of course the account, as well as the note, after maturity would bear interest."

In VTR, Inc., v. Tolbert, (1966) 240 Ark. 31, at page 33, 397 S.W.2d 807, at page 809, the court said:

"Appellant states as one of its points on appeal that the trial court erred in allowing interest from September 1961 on two items. The account would bear interest from maturity. Frazer v. Pettit-Galloway Co., 172 Ark. 209, 287 S.W. 1010; 47 C.J.S. Interest § 45, p. 56."

Article 19, Sec. 13, of the Constitution of Arkansas provides:

"All contracts for a greater rate of interest than ten percent per annum shall be void, as to principal and interest, and the General Assembly shall prohibit the same by law; but when no rate of interest is agreed upon, the rate shall be six per centum per annum."

The motion of the use plaintiff for summary judgment should be sustained, and the use plaintiff is entitled to recover against all of the defendants for the sum of $1,174.49 with interest thereon at 6 percent, calculated on $267.07 from October 1, 1965; on $184.55 from November 1, 1965; on $368.40 from December 1, 1965, and $354.47 from January 1, 1966, to date of judgment. In addition, the plaintiff is entitled to judgment against the defendant Commercial Union Insurance Company for an amount equal to 12 percent of the

principal and interest, and for a reasonable attorney's fee, which the court, after consideration of the entire record, fixes at $300.00.

Therefore the motion of plaintiff should be granted, and the Clerk of the Court will calculate the amount due as above stated, and judgment will be entered today for plaintiff in accordance with the above, including court costs.